2013, 71-25, Ms. Odom. May it please the Court, Amy Odom for the appellant, Leonard Bernard. This case involves the scope of the Veteran-Friendly Rule in 38 CFR 3.156B, which is interpreted by this Court's decision in Bond v. Shinseki, requires the VA to make a determination as to whether evidence is new material when that evidence is submitted within the first year of rating decision. Part and parcel of the bond holding is that the decision remains pending until this determination is made. Why isn't this case governed by Williams? Well, Williams doesn't address the particular situation here involving 3.156B. Williams addresses when the decision remains pending because the VA's failure to notify the Veteran of the VA's decision, whereas 3.156B, as interpreted by the Court in Bond, makes clear that a decision remains pending when new evidence is submitted and that the ball is then put squarely in VA's court to make a determination as to whether that evidence is new material. Just curious, is there a way that you can summarize in one sentence the principle that would reconcile the Williams' opinion with the Bond opinion? Yes. Bond says that the submission within a year renders the opinion non-final and the appropriate reading of Bond is that the only thing that can cure VA's failure to do that within that year is the determination as to whether it's new material, whereas Williams says a subsequent decision that notifies the Veteran of the decision on the merits of the claim is enough to cure the error of the failure to notify in the first place. In this case, VA still to this day hasn't made the determination as to whether the 1985 submission is new material. I guess my question is, do you see the holding in Bond as kind of like an exception to Williams? Williams says, you know, if you have an earlier pending claim that hasn't been acted on and then you have a subsequently filed claim, which is the same as the earlier claim, and the second claim gets adjudicated, then even though you've never received any notification on what happened to your earlier filed claim, the adjudication of the second claim serves to you, the Veteran, as an implied denial of that first claim. Then Bond, is Bond saying, I guess your position would be that Bond would say that's all true in Williams unless in the first claim there was new and material evidence that was lurking that was never part of that second claim. In those circumstances, there can't be an implied denial of the earlier filed still pending claim because of the new and material evidence making it somehow a different claim according to Bond. I think the way that we see Bond is that Bond is something separate and apart completely from Williams. Williams just deals with notice of the previous decision. So Williams deals with the subsequent case closing out a previous one, doesn't it? It does when the previous... And isn't that the case here? Whereas Bond doesn't deal with those facts. I'm sorry, Bond doesn't... Bond doesn't deal with the subsequent case, with the two separate cases. Bond doesn't deal with the separate case, but you have to read Bond as providing that the claim remains pending until the determination is made. So if the determinations aren't made in any subsequent decisions, then under Bond it has to remain pending. But there was a subsequent case in Bond. It was actually the same fact as this, was it not? Respectfully, Your Honor, I do not believe that there was an intervening decision. The pending decision that the court in Bond found was pending as a result of the submission within the year. It was dated in 1997. And then Bond found it was still part of the same claim stream because then there was a subsequent decision that granted service connection and signed a 100% rating, or I believe it was 100%, but only back to the day that Mr. Bond made the submission. And then Mr. Bond appealed that all the way up to the federal circuit, which decided in that 1997 decision was still pending by virtue of the submission that Mr. Bond made within a year of that decision. So is it your point that Williams simply determined that a procedural error of lack of notice could be resolved by later notice? Absolutely. And in this respect, 3.156 treats a submission within the year in the same way that a notice of disagreement is treated. A notice of disagreement in a submission within a year of the rating decision would be only two ways to prevent a rating decision from becoming final. So just like in Myers, the Court of Appeals for Veterans Claims said that subsequent rating decisions can never cure the error of failure to recognize a notice of disagreement, subsequent rating decisions that don't recognize the submission that was made within the year can't possibly cure VA's failure to make the determination in the first place as to whether that submission rendered the prior claim, prior decision. I'm sorry. Are you saying that if in the facts of Williams, the earlier claim notice of disagreement had been filed, then Williams would, that opinion would not have been able to come out the way it came out? That's true. If there was notice of disagreement, it would have put the ball in the court for the VA to then render or issue a statement of the case. Just like here, once that submission was made within the first year of the rating decision, it put the ball in VA's court to make a determination as to whether it was new material. And in Jones v. Shinseki, this court looked favorably at Myers. And what we're arguing today, that the VA's failure to ever make the determination required by 3.156 just renders any subsequent decisions that don't make that determination invalid is totally consistent with Jones. In Jones, this court held that the failure to process an appeal by failing to issue a determination can only be cured by a subsequent appellate decision, because the failure to properly process an appeal can only be cured by the appellate decision. Here, the failure to ever have made the determination in the first place as to whether the 1985 submission was new and material can only be cured by a decision that makes that determination. So the 1990 and subsequent decisions that didn't even address the 1985 submission or make any determination as to whether it was new and material can't possibly cure the error to do it in the first place. Like the sentence in the Veterans Court, I'm a little confused by the record. Is there anything in the record that indicates that the medical documents that are at issue here were ever actually obtained by the VA? No. The documents that Mr. Berard provided the VA with the information about were his reserve records, because they specifically requested that he provide the information about his reserve units. And the only thing in the record regarding his reserve service is one single periodic medical examination. And as we pointed out in our brief, the law provides that a reserve member has to have these examinations, and I believe it's biannually, such that with Mr. Berard's specific length of reserve service, we would expect to see much more than that if, in fact, they had obtained his full reserve records. Okay. Yeah, so just to confirm to your position that there's nothing in the record that confirms that the VA ever had in possession and also consulted these reserve records? That's true. The ones that they specifically requested the information about. And I see my time is about to expire, so if there aren't any further questions. We will reserve the rest of your time for a bottle. Thank you. Ms. Hosford. Thank you, Mr. Court. Mr. Berard seeks to create a new exception to the well-established rule of finality that this Court has recognized on numerous occasions. In this case, Mr. Berard's 1985 claim was rendered final when the rating agency in 1990 re-adjudicated his claim on the merits and denied it. The only way to overcome that today is through an application showing clear and unmistakable error or by showing some sort of new material as if Mr. Berard could produce records that were not considered at the time. Just so I understand the government's position, the bottom line is that Williams dominates Bond. Is that a fair way to say it? That is true. Yes, I have two responses to that. First, Bond isn't a finality case. In Bond, what happened was the claimant made a claim in 1997 and then that was denied and then he submitted further evidence. That evidence was not considered until 1998 when he filed another claim. The dispute there was, was this a new claim for increased rating or was he relying on this prior evidence to support the original claim? But that 1998 claim was never final. He appealed that. And yes, it wasn't finally determined until 2011, but that claim was never final. The court properly considered whether 3.156C was correctly applied in that case because there was no final decision. Here we have an intervening final decision in 1990. Isn't it true, though, that Williams, I mean, when you look at Williams, it specifically said, look, there's no regulation that tells us anything about failure to provide notice. And it ultimately then said, okay, you can cure a lack of provision of notice. But it didn't say that where there are regulations that were violated, such as 3.156, that the VA is somehow cured of every regulatory violation that predated that subsequent decision. Williams is a notice case. But there are subsequent decisions, Bingham and Monroe, that show that it does apply in those circumstances. In Bingham, the claimant claimed 20 years after a claim was denied that the VA should have considered presumptive eligibility, which was an alternative basis for a claim. And this court ultimately held, you know what, it's entirely possible that the VA should have considered presumptive eligibility. But the problem was he didn't appeal that decision at the time. Therefore, that decision is final, and we can't consider that now. If he wants to come back and file a Q claim and say that there was an error at that time. But that's different than saying that there is a claim that whether a claim remains open. The claim does not remain open because there was a final decision in 1990. Another comparable case is the Monroe case. Now, that one didn't involve 3.156C, but there what happened was a veteran submitted, there were informal claims recognized for 1996 and 1997. The VA then heard a formal claim in 1998 and denied it. Mr. Monroe many years later said, well, wait a second, you didn't consider all the evidence that I submitted when I made my 1988 claim, including the 1995 informal claim, which was a medical report. This court held, again, if you wanted to take issue with the VA's failure to consider that 1995 report in 1998, you should have appealed it then. You can't wait until now. But that does not involve 3.156. No, but it doesn't matter. We've got the Charles decision. But Charles does involve 3.156. The problem is with your theory here is what the VA could do is simply never consider whether or not new and material evidence is submitted. It could just sort of ignore all of its obligations as it relates to an existing claim, could then try to close out that claim and never give the veteran an opportunity to say that that's the date, the effective date that should have been considered. That's exactly what happened in Bingham. The veteran many years later said, you didn't close out the claim because you didn't consider my 1995 informal claim. Therefore, it wasn't final. This court said, no, it was final. But there was no new and material evidence in that one, was there? Well, when he filed the 1998 claim, he said, please consider my records from 1993 to 1997. And the RO expressly said, we've considered your records from 1996 to 1997. And the decision reflects that those other records were never obtained. Just curious, is it a general matter when there's claims, the VA is usually pretty good at issuing decisions on those claims, right, and adjudicating them. It might take them a little while, but eventually they do it, right? So Williams is kind of like an exception to that rule of giving decisions by, in that sense, through some form of implied denial. There was never a decision on that first claim ever given to the veteran. But we're going to treat the decision on the second claim as if it also can serve as a decision on the first claim. The two claims were identical. Yeah, but that's the decision in Williams. No actual decision paper was issued to the veteran there. And as an exception to the ordinary rule that that is required, we reached out and Williams had said, okay, but except in this particular exception. No, we have Bingham and we have Monroe. Both of those cases did not involve simple notification. But it did not involve. The finality rule, it's like race eudicotic. You don't appeal a decision. It didn't involve 3.156. But Charles involved 3.156. What happened in Charles was a veteran submitted a claim. It was denied. Or no, there was either a denial or additional evidence was submitted. And then a subsequent claim was submitted, but he abandoned it. And so VA tried to argue, well, even if the original claim was open, that abandonment of the second claim achieved finality. And it was a 3.156 claim where there was additional evidence submitted. This court held, no, that's not the way it works. Williams would apply in this case, but the problem is you abandoned the claim. There was no final decision on it that denied it. So therefore, even though 3.156 can be the subject of a finality or an implicit denial, that claim is not the case. But that wasn't the basis for the holding in that case. The court expressly acknowledged Williams. But it's dicta. No. We can always acknowledge, but if it wasn't the basis for the holding, it is by definition dicta. It wasn't necessary to the holding. I respectfully disagree, Your Honor, because in that case, the court had to find that the abandonment was not a final decision to overcome the finality rule. It didn't have to do that. But if it said there was no final decision, that was ultimately the conclusion. In other words, even if Williams would apply, it wouldn't apply in these circumstances. So that is just dicta. There is not a single case out there where the court has ever held excessive with respect to cues. There was a new claim in Williams. I mean, in Bond. There was the new claim. Right. And that new claim stayed open and live until the court ultimately decided that for purposes of calculating the effective date, the RO should have considered whether the evidence related to the prior claim or the new claim. There was never a final decision there that was not appealed. That is the critical difference here. Also, in that case, there wasn't a denial. It was a grant. The second decision was a grant. And the question was, okay, you've granted it. What's the proper effective date? Mr. Farrow has opened to him the avenue of filing a clear and unmistakable error claim to show, if he can, that in 1990, the VA. Well, why should that be his burden when the VA did not follow the regulations that govern its activity? Because he didn't appeal the 1990 decision. But Bond makes it clear that there is an affirmative obligation on the VA to make those findings. Bond made that finding only in the context of a claim that was ultimately granted and it wasn't clear what the effective date was. And Mr. Bond brought a timely appeal and said, wait a second, I don't think you calculated the effective date correctly. It was a timely appeal. Where do we have jurisdiction here? Is it to interpret 3.156 or is it to reconcile Williams and Bond? Well, the question here is whether 3.156C creates an exception to the finality rule. And there's absolutely no precedent for that. Bond does not provide precedent for that issue. Bond was not a finality case in Bond. It was an open claim. It was granted. Mr. Bond properly appealed it and he got a decision on the issue. I would also add that if Mr. Burroughs can come up with records other than the ones that are already there and they bear on the decision in 1985, he can also get an earlier effective date on that basis under 3.156C. We argued that in our briefing. How much of a burden would it be administratively on the VA if we were to hold when there's new material evidence in a claim like this? They need to address it. We realized that there was a subsequent claim and the subsequent claim was adjudicated, but that claim didn't invoke 3.156 like the earlier one, which is pointing to what needs to be resolved, whether it in fact is new material evidence. Would that be some extreme burden on the VA? No, that would not be an extreme burden on the VA, but that issue is not properly before the court because the 1990 decision was final. Mr. Burroughs can raise that in a clear and unmistakable error claim, but he cannot now attack the 1990 decision because it was final. This is under your theory that Williams dominates Bond, right? Bond does not create an exception to the finality rule. The finality rule is well established. Bingham says there are only two ways to overcome finality, new or new material evidence. Bond does not address that issue in any way, shape, or form. Bond was an open claim. In 1998, there was no question... You only get to Bingham if we assume that Williams meant to lay down a broad rule for all circumstances and not simply those factually before it at the time. Bingham is an implicit denial of flash finality case, just like Williams. We can't look at Williams in isolation. There's been subsequent authority that elaborates on the Williams rule. Bingham, Monroe, Charles... Excuse me? Monroe is not cited in your red brief, is it? No, but Mr. Burroughs brought it up in his brief and claimed that it was distinguishable. That's why I'm raising it now. But you didn't rely on it. No, we did not rely on it, but that doesn't mean that it's not applicable here. We felt confident that Charles and Williams and Bingham and all their progeny were enough to establish the finality rule here, and we more than adequately distinguished Bond. Bond is not a finality case. There was no final decision. Mr. Bond appealed a live decision, and he got an interpretation of 3.156C. Mr. Burroughs can do that too. I would also just point out... I know I'm running out of time, but... Mr. Burroughs... And obviously the court has no jurisdiction over application of law to fact, so looking at what the board did or didn't do, or what the RO did and didn't do in 1985 and 1990, it's not really before the court, but I would point out that the board, if you see JA34, the board found that the records were obtained. Judge Bartley, in the dissenting opinion, seems to disagree with that, but that is the ruling that we have on the record as it stands. I would also say that... Is it in the joint appendix somewhere? JA34. No, I mean, you're saying that the VA had received all of those records that Mr. Burroughs pointed to. Are those records in the joint appendix for us to consult? Yes. Where are they in the joint appendix? The records that were available to the RO at the time were at pages JA108, JA79, JA136, and yes, you know what? Admittedly, they're all 1985 documents, but... Do those represent all of the reserve records? Well, you know, it's not entirely clear when Mr. Burroughs entered the reserve. On his discharge papers, it seems that he's going to be transferred to the reserve, but if you look at pages JA39 through 41 of the record, it appears that he didn't become a reservist until 1982, and if you look at page JA... So there's no records of pre-date 1985. Right, but if you look at page JA115, that is part of Mr. Burroughs' original application for benefits. It asks about civilian physicians and hospitals where you were treated for any sickness, injury, or disease. It's at the top of the page. From 1979 to 1981, he was treated by private physicians. Now, obviously that doesn't preclude him from obtaining treatment from the VA, but it's a sign that he was not. The answer to Chen's question, though, is that the very records that were cited in the 1985 letter were not in the record. Were not in the record as of the... No, that's not true. That's not true. You just said there was nothing in the record that predated 1985. But 1985, those were his reserve records. There were records from earlier in the year in 1985. His reserve records were transferred. Mr. Burroughs claims that they weren't all transferred, but he cannot deny that there were records transferred. What he's trying to say is that what happened was this. There was some confusion in August of 1985 about where Mr. Burroughs' records were. In October of 1985, the RO said, hmm, we're not sure we have his reserve records. Let's look into this. Then November 5th, 1985, and that's in the record, they received records from the reserve. But nonetheless, they sent a letter to him a few days later saying, hey, we can't find your records. But the record indicates that they did have his records as of November 5th. The decision came out December 9th. Mr. Burroughs wrote his letter December, I think it was 16th. But at that point, and you can see on the... That decision was on the second claim, not the... That was the first claim. First claim. Those records weren't there for the first claim. And if you look at Mr. Burroughs' letter, and we put, this is in our brief, if you look at page JA93, here's his letter saying my metal records are located, you know, 5020 Lake Shore Drive. At the bottom, there's a signature, 12-1985, and it says NAN. We put this in our brief.  Here what happened was they already had the records, but they had sent the letter out before they realized it. There's no question here that if there are records out there... Are there any further questions? No. Thank you, Ms. Hartsford. Ms. Oden has a little rebuttal time. Thank you. First we want to point out, as we mentioned in our opening argument, 3.156B does indeed create an exception to finality, just like a notice of a disagreement does. If a veteran does not submit a notice of disagreement within the first year of the rating decision and does not make any submissions within the first year of the rating decision, the decision becomes final. The only two ways that you can prevent that from happening are making a submission or submitting a notice of disagreement. To the extent that the government insists that Bond does not address finality, and neither does 3.156B, it's just plainly wrong. Second of all, I want to go back to talking about the significance of the 1997 decision in Bond. In Bond, the initial decision on the claim was dated 1997. That decision would have become final in a year, in 1998, except that Mr. Bond made a submission between 1997 and 1998. The claim then remained pending all the way up until it got here in 2011 because nobody ever looked at whether that submission was new material. If that submission had not been made between 1997 and 1998, the case would never have gotten here because there would be no question that the first decision in 1997 had become final in 1998. And then I want to talk a little bit about Bingham. Bingham addressed whether failure to address a certain theory of entitlement to benefits renders a decision non-final. The government points out that it was the failure to address presumptive service connection. Well, presumptive service connection is addressed in 3.307 and 3.309. Neither of those regulations say anything about finality or whether a claim remains pending. In contrast, 3.156B is clear that a claim is pending if there's a submission within a year. So the reliance on Bingham is really misplaced because it has nothing to do with 3.156B and it doesn't deal with a regulation that says anything about whether a claim remains pending or not. Judge O'Malley, I think you have the right idea here. The 3.156B at its heart is really a protective measure for veterans so that the veteran can be assured that when he or she makes a submission, VA is not going to just ignore it, which is exactly what happened here. And if they do ignore it and they do make that error, then 3.156B protects the veteran to bring that effective date all the way back because that claim has remained pending due to VA's failure to ever address this specific submission. And then finally, the government spent the last few minutes of their argument talking about whether the records are there or whether they're not and basically asking this court to conduct a trial about what NAN actually meant on that letter and whether they really thought that there were additional records and whether they're available. It's neither here nor there because VA never made any sort of determination in the first place. VA never looked at this letter and made any determination as to whether there were records available that they needed and were material to the case. And I would say that they were because if you look at the board's decision that's here on appeal in 2010, the board itself at JA31 specifically said that the 1985 decision denied the headache claim because they were not chronic since the period of service. So the fact that they had service medical records from active duty in the record at the time that they rendered the decision, according to the board, was not relevant to the reason why it was denied. It was denied because there was no evidence of headaches since active duty. And the reserve records surely could show that he did complain of headaches during his reserve period following active duty. And this court especially has been very attuned to the VA's special obligation to get records that are in federal custody and especially the military's custody because they have a special access to it. And finally, I just want to point out that it's really unclear to us how Mr. Berard would have any other remedy in this case. We tried the Q argument and it didn't work. And as far as the government... What do you mean you tried the Q argument and it didn't work? Well, the court affirmed the board's decision that there wasn't clear and unmistakable error in the 1985 decision. And furthermore, to the government's suggestion that Mr. Berard can now go out by himself and get these records, again, even though this court has made clear that it's the VA's special obligation, and then submit them and may begin an earlier effect under C, it doesn't make sense under the well-established principle that there's no freestanding claim for an earlier effective date. So I'm not sure how he would go about doing that if the board's decision, which is part of the claim stream from the initial decision, were to remain, or to the decision of Grants and Service Connections, were to remain final, due to an affirmance by this court. Thank you. Thank you, Ms. Oda. We'll take the case under advisement. All rise. The Honorable Court's adjourned. The case is closed.